```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/18/24
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHEUNG WAN GALLERY LTD.,

                    Plaintiff,

          - against -

MICHAEL KAGAN,

                    Defendant.

---

MICHAEL KAGAN,

                    Counterclaimant and
                    Crossclaimant,

          - against -

SHEUNG WAN GALLERY LTD.,

                    Counterclaim
                    Defendant, and

OVER THE INFLUENCE INC.,

                    Crossclaim
                    Defendant.

---

**23 Civ. 2519 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

        This case began as a contract action filed by Plaintiff
Sheung Wan Gallery Ltd. ("SWG") against Defendant Michael
Kagan ("Kagan") on March 24, 2023. (See Dkt. No. 1
[hereinafter the "Complaint" or "Compl."].) On May 26, 2023,
Kagan answered the Complaint and asserted five claims of his
own against SWG and Crossclaim Defendant Over the Influence
Inc. (See Answer, Counterclaims, and Crossclaims, Dkt. No. 8
[hereinafter the "Answer, Affirmative Defenses, and

1

Counterclaims" or separately as the "Answer," the "Affirmative Defenses," and the "Counterclaims"].[1])

Now before the Court is SWG's and Over the Influence Inc.'s joint motion to dismiss four of Kagan's five Counterclaims. (See Dkt. No. 21.) For the reasons below, the Court **DENIES** the motion to dismiss.

## I.    BACKGROUND[2]

Kagan is a visual artist living in Brooklyn. SWG is a Hong Kong business entity that does business under the name "Over the Influence." It owns and operates Over the Influence art galleries in Hong Kong, Los Angeles, Bangkok, and Paris. Over the Influence Inc. ("OTI Inc.") is a Delaware corporation with principal offices in Hong Kong. SWG and OTI Inc. operate in concert as a single business enterprise under common ownership and control, and they represent themselves to the art market and general public as a single entity doing business as "Over the Influence" without regard to any corporate or other distinction between the two entities. The

---

[1] The Answer, Affirmative Defenses, and Counterclaims are all in one document, but they can be cited separately without difficulty, given that Kagan begins anew at paragraph "1" when setting forth his Affirmative Defenses and does so again when pleading the Counterclaims.

[2] Unless otherwise specified, the facts set forth here are alleged or admitted by Kagan in the Answer, Affirmative Defenses, and Counterclaims. For the purposes of addressing the instant motion to dismiss four of the Counterclaims, the Court assumes these facts are true and draws all reasonable inferences in Kagan's favor. See SEC v. Morningview Financial LLC, No. 22 Civ. 8142, 2023 WL 7326125, at *1 n.1 (S.D.N.Y. Nov. 7, 2023).

Court will therefore use the term "SWG" to refer to both entities collectively, unless the distinction between the two is relevant.

A.   THE REPRESENTATION AGREEMENT

Kagan and SWG signed a contract (the "Representation Agreement" or the "Agreement") pursuant to which Kagan appointed SWG to serve as his exclusive agent with respect to certain artworks created by Kagan and purchased from him by SWG. The term of the Representation Agreement was two years, beginning July 1, 2019.

The Agreement provided that Kagan would sell SWG 35 artworks per year over the two-year term, in exchange for quarterly payments totaling $1.1 million. The parties further agreed to work together in good faith to produce art prints from Kagan's artworks, with production and shipping costs to be paid by SWG and the proceeds "to be split 65 percent to SWG and 35 percent to [Kagan]." (Counterclaims ¶ 19.)

In the Agreement, SWG promised to use its best efforts to promote and represent Kagan, increase Kagan's worth or market value, and organize shows. SWG also expressly assumed a fiduciary duty to Kagan. Moreover, the parties each agreed to take no action intended or that would reasonably be expected to harm the other party and agreed that the fiduciary

relationship and the duty not to harm would survive the termination of the contract for an additional two years.

The Agreement further contains a force majeure clause providing that the parties are not liable for failure to perform resulting from causes outside their control. And a choice-of-law clause provides that the Agreement "and any non-contractual obligations arising out of or in connection with it shall be governed by and construed in accordance with Hong Kong law." (Counterclaims, Ex. A cl. 20.1.)

Kagan and SWG both allege that the other party failed to perform. Kagan admits that despite receipt of payment for 70 artworks, he has provided SWG with only approximately 22 artworks. Kagan alleges that SWG failed to timely pay money due him under the Agreement and that SWG failed to pay vendors it hired in connection with the production of Kagan's artworks, damaging Kagan's reputation.

B.   THE CERNAN SCULPTURE EDITIONS

Before the term of the Representation Agreement began, Kagan created a three-dimensional digital model embodying a sculptural work called "Cernan," in collaboration with nonparty Olo Industries LLC ("Olo"). Pursuant to an agreement between Olo and Kagan with an effective date of May 20, 2019, Olo assigned to Kagan its interests in Cernan, such that Kagan

was and is the sole owner of all copyright interests in the work.

Kagan created three derivative sculptural works based on Cernan, titled "Cernan (White)," "Cernan (Blue)," and "Cernan (Black)," and he is the sole owner of all copyright interests in these three works. Kagan and SWG agreed that SWG would produce and release editions of Cernan (White), Cernan (Blue), and Cernan (Black) (together the "Cernan editions"), numbering 100 each and with 20 artist proofs for each, to be fabricated by Olo subject to Kagan's direction and final approval.

On approximately October 8, 2020, Kagan reviewed and approved Olo's proofs of the Cernan editions. These proofs contained no copyright notice. Later the same month, SWG offered the Cernan editions for sale through its online store known as Garey the Third, located at the website gareythethird.com. The Cernan editions sold out within minutes.

SWG promised purchasers of the Cernan editions that the sculptures would be shipped within four to six weeks. But SWG failed to arrange for the production of the Cernan editions for almost one year after the sculptures were sold. Shipping did not start until about 15 months after purchasers were promised delivery. As a result of the delay, Kagan received

messages from angry purchasers of the sculptures who had concluded that the offering was fraudulent, allegedly damaging Kagan's reputation. Additionally, SWG failed to pay Kagan for his agreed percentage of the sales — approximately $36,000 — for more than one year after the payment was due.

When the Cernan editions were delivered to purchasers, the sculptures themselves and the boxes in which they were delivered contained the inscription "© 2021 Garey III," which Olo inscribed at SWG's direction even though only Kagan owned the copyright interest in those works.

C.   SWG'S ALLEGED ATTEMPTS TO INTERFERE WITH KAGAN'S PROFESSIONAL RELATIONSHIPS

In or around the spring of 2021, Kagan told SWG that he did not intend to renew the Representation Agreement, the term of which expired on June 30, 2021. Upon learning of Kagan's intention not to renew the Agreement, SWG executives Raphael Geismar ("Geismar") and Vivien Rousseau repeatedly threatened to block Kagan's sales of his artworks through other art dealers. Shortly before the commencement of this lawsuit, Geismar met with art dealer Adam Lindemann ("Lindemann") and Lindemann's gallery director. Lindemann's gallery had been planning a major show of Kagan's artworks. At the meeting between Geismar, Lindemann, and the gallery director, Geismar purportedly made disparaging and untrue

statements   intended   to   interfere   with   Lindemann's representation of Kagan and to cause Lindemann to decide not to proceed with the show of Kagan's artworks.

D.   <u>PROCEDURAL HISTORY</u>

SWG filed this suit against Kagan on March 24, 2023, bringing a breach of contract claim and an unjust enrichment claim in the alternative. (<u>See</u> Compl. ¶¶ 106–132.) Kagan answered the Complaint on May 26, 2023 and asserted five Counterclaims against SWG: (1) breach of contract, (2) breach of   fiduciary   duty,   (3)   provision   of   false   copyright management information, (4) distribution of false copyright management information, and (5) copyright infringement. (<u>See</u> Counterclaims ¶¶ 53–85.) Kagan brings the same claims against OTI Inc., denominating them crossclaims with respect to that entity. (<u>See</u> <u>id.</u>)[3] OTI Inc. waived service and appeared, and it and SWG are both represented here by the same law firm. (<u>See</u> Dkt. Nos. 11, 14.)

On July 25, 2023, consistent with the Court's Individual Practices, SWG and OTI Inc. jointly filed a pre-motion letter sent to Kagan and identifying alleged deficiencies in four of Kagan's   five   Counterclaims   that   would   purportedly   supply

---

[3] The Court will use the term "Counterclaims" to refer both to the Counterclaims against SWG and to the crossclaims against OTI Inc., unless the distinction is relevant.

grounds for a motion to dismiss. (See Dkt. No. 15 [hereinafter
the "Motion" or "Mot."].) On August 1, 2023, Kagan filed a
letter sent in response to SWG and in which Kagan advised
that he would "maintain all of the counter-crossclaims as
pleaded." (Dkt. No. 16 [hereinafter "Opp."] at 1.) On August
11, 2023, SWG filed a letter requesting that the Court
schedule a pre-motion conference and advising the Court that
the parties' letter exchange failed to resolve the dispute
and thus avoid the need for motion practice. (See Dkt. No.
17.) SWG's August 11 letter also contained responses to legal
arguments made by Kagan in his August 1 letter. (See id.
[hereinafter "Reply"].)

On August 24, 2023, the Court ruled that a pre-motion
conference would not be necessary and ordered the parties to
advise whether they would consent to the Court deeming the
pre-motion letters as a fully briefed motion and ruling on
the basis of the letters or whether they would instead request
full briefing on the motion to dismiss. (See Dkt. No. 18.) On
August 29, 2023, the parties jointly filed a letter advising
that they consented to the Court deeming the pre-motion
letters as a fully briefed motion and ruling on the basis of
the letters. (See Dkt. No. 19.)[4]

---

[4] SWG has not moved to dismiss Kagan's first Counterclaim for breach of
contract. (See Mot. at 1-3.) Accordingly, discovery is underway in this

## II.   **LEGAL STANDARD**

The Court construes the Motion as made under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). To survive such a motion, the relevant Counterclaims must each "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is satisfied if Kagan has pleaded "factual content that allows the court to draw the reasonable inference that [SWG] is liable for the misconduct alleged." Id. Put differently, pleadings should not be dismissed when the allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. However, "the tenet that a court must accept as true all of the allegations contained in a [pleading] is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

A Rule 12(b)(6) motion challenges only the legal feasibility of the pleading, and courts adjudicating such motions take no account of the pleading's basis in evidence. See Nunes v. NBCUniversal Media, LLC, 643 F. Supp. 3d 403, 411 (S.D.N.Y. 2022). "Generally, courts do not look beyond

---

case. The Court approved a Case Management Plan and Scheduling Order on October 27, 2023. (See Dkt. No. 22.)

facts stated on the face of the [pleading], documents incorporated in the [pleading], matters of which judicial notice may be taken and documents that are 'integral' to the [pleading]." Id. (quoting Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016)). At the same time, the Rule 12(b)(6) standard instructs the Court to construe the pleading "liberally." In re Inclusive Access Course Materials Antitrust Litig., 544 F. Supp. 3d 420, 431 (S.D.N.Y. 2021) (quoting Coal. For Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018)).

## III.  **DISCUSSION**

SWG moves for dismissal of Kagan's fiduciary duty claim and his three copyright-related claims. For the reasons that follow, the Court holds that all of Kagan's claims survive the Motion.

A.   SUBJECT MATTER JURISDICTION

Before reaching SWG's arguments, the Court must satisfy itself that it has subject matter jurisdiction over this action and the relevant claims, notwithstanding that no party has raised the issue. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997) (stating that a court may raise issue of subject matter jurisdiction sua sponte). SWG brought the case pursuant to 28

U.S.C. § 1332 (see Compl. ¶ 4), which grants a federal district court jurisdiction over a civil action "where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). SWG demands judgment awarding more than $5 million in damages, and Kagan does not dispute that the amount in controversy exceeds $75,000. (See Compl. at 17; Answer ¶ 4.) Moreover, there is no dispute over the citizenship of the parties; SWG is a citizen of Hong Kong and Kagan of New York. (See Answer ¶¶ 2-3.) There is thus subject matter jurisdiction over the claims brought by SWG in the Complaint.

The Court also has subject matter jurisdiction over the five Counterclaims and crossclaims. Three of these claims sound in federal copyright law and are thus jurisdictionally proper under the federal question statute, 28 U.S.C. § 1331, which grants this Court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The remaining two claims are nonfederal contract and fiduciary duty claims and are brought against SWG and against OTI Inc., which is alleged to be a Delaware corporation with principal offices in Hong Kong. (See Counterclaims ¶ 3.) To the extent jurisdiction over these claims is premised on diversity of citizenship, the Court

finds that OTI Inc. is more properly labeled a plaintiff than a crossclaim defendant. See Lane v. Birnbaum, 910 F. Supp. 123, 128 (S.D.N.Y. 1995) (stating that for purposes of complete diversity rule, a court should look beyond the pleadings and arrange the parties according to their actual sides in the dispute). In any case, the Court under 28 U.S.C. § 1367 would have supplemental jurisdiction over all of Kagan's Counterclaims and crossclaims, as they share a common nucleus of operative facts with SWG's claims against Kagan. See 28 U.S.C. § 1367(a); Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011); Sun Life & Health Ins. Co. v. Colavito, 14 F. Supp. 3d 176, 182 (S.D.N.Y. 2014). The Court thus proceeds to the merits.

B.   THE FIDUCIARY DUTY CLAIM

Kagan pleads his fiduciary duty claim "[i]n addition and/or in the alternative" to his contract claim. (Counterclaims ¶ 64.) He alleges that SWG, by accepting the appointment as his exclusive agent with respect to certain artworks, assumed a fiduciary duty to Kagan. (See id.) Kagan contends that SWG breached this duty by, among other things, failing to pay vendors for production of his artwork, failing to meet delivery and other obligations to purchasers of

Kagan's artwork, and disparaging Kagan to other art dealers. (See id. ¶ 65.)

SWG argues that the fiduciary duty claim must be dismissed because it is duplicative of Kagan's contract claim. (See Mot. at 1.) In response, Kagan contends that the claim can withstand a motion to dismiss because it is properly pleaded in the alternative. (See Opp. at 1-2.)[5]

Construing the Counterclaims liberally, the Court holds that the fiduciary duty claim may stand. Kagan points out that he has raised an affirmative defense that the Representation Agreement is unenforceable (see Affirmative Defenses ¶ 7) and that SWG itself has asserted an unjust enrichment claim in the alternative to its breach of contract claim (see Compl. ¶¶ 124-32). Thus, given that SWG and Kagan both apparently allow for the possibility that the Agreement cannot be enforced, Kagan must be allowed to do as SWG does and plead in the alternative. Cf. Advanced Oxygen Therapy Inc. v. Orthoserve Inc., 572 F. Supp. 3d 26, 35 (S.D.N.Y.

---

[5] The Court notes that despite the statement in the Representation Agreement's choice-of-law clause that the Agreement is to be governed by Hong Kong law, neither party discusses the impact of this clause, if any, on the instant litigation, and both parties cite cases applying New York law. (See Mot. at 1; Opp. at 1-2.) The parties may wish at a later stage in the litigation to explore this issue; the Court here addresses only the arguments raised by the parties. See United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020) (stating that courts "normally decide only questions presented by the parties" (quoting United States v. Samuels, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc))).

2021) (holding that party could plead unjust enrichment theory in the alternative where enforceability of contract was in dispute).

Moreover, some factual development is needed. If the Agreement is unenforceable, it is an open question whether SWG nevertheless through its conduct "accept[ed] Kagan's appointment as his exclusive agent" and thus "assumed a fiduciary duty within the context of their relationship" (Counterclaims ¶ 64). See Advanced Oxygen Therapy, 572 F. Supp. 3d at 37 (stating that New York courts "generally avoid dismissing a claim of breach of fiduciary duty" because such a claim "usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence" (quoting Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 26 (S.D.N.Y. 2009))).[6] Accordingly, the Court **DENIES** the Motion with respect to the fiduciary duty claim.

---

[6] The Court is aware of at least one example of a New York court dismissing a fiduciary duty claim as duplicative of a contract claim. See Pollak v. Moore, 926 N.Y.S.2d 434, 436 (App. Div. 1st Dep't 2011) (holding that contract claim was barred by statute of frauds and that fiduciary duty claim was duplicative of contract claim and thus properly dismissed). The practice of "dismissing so-called 'duplicative' claims" has been criticized as "def[ying] the permissive pleading standards embodied in" New York's law of procedure. Joshua S. Bauchner, Let Them Plead in the Alternative, 252 N.Y. L.J., no. 51, Sept. 12, 2014, at 4. Since SWG has not argued that the Court — despite the federal rule allowing alternative and inconsistent pleading, see Fed. R. Civ. P. 8(d) — is bound by this apparent New York practice, the Court declines to further address it. See Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1371 (7th Cir. 1990) (Posner, J.) (stating that Federal Rules of Civil Procedure abolished doctrine whereby parties were forbidden to plead in the

C.   <u>THE COPYRIGHT CLAIMS</u>

Kagan brings three claims sounding in copyright law: one claim for copyright infringement and two claims arising under the Digital Millennium Copyright Act. The Court will analyze these two types of claims in turn.

1.   <u>The Copyright Infringement Claim</u>

Kagan brings his copyright infringement claim under 17 U.S.C. § 501, asserting that SWG infringed his copyright interest in Cernan (White) by distributing editions of the artwork containing false copyright information, namely the inscription "© 2021 Garey III," without Kagan's authorization. (<u>See</u> Counterclaims ¶¶ 81-85.) SWG argues that this claim must be dismissed because Kagan in the Representation Agreement expressly granted SWG a license to use the copyrighted work. (<u>See</u> Mot. at 1-2.)

The Court disagrees. In the Representation Agreement, SWG allegedly promised not to reproduce Kagan's artwork without his written permission and promised to "ensure that [Kagan's] copyright to the [artwork] is protected, including informing all purchasers that [Kagan] retains copyright in the works." (Counterclaims, Ex. A cl. 13.1.) The Agreement

---

alternative and that alternative pleading is thus allowed "in all federal civil litigation, even if the issue being litigated is one of state law").

further provided that in "every instance of reproduction," the bill of sale for an artwork "shall contain" a legend stating that "[a]ll rights belonging to the holder of the copyright, including the production rights, shall remain with Michael Eric Kagan." (Id. cl. 13.3.)

SWG contends (see Mot. at 2) that it had a license defeating any copyright claim because Kagan admittedly reviewed and approved proofs of the Cernan editions, but this argument mischaracterizes the Counterclaims. Kagan alleges that he approved proofs containing "no copyright notice" (Counterclaims ¶ 36) before the editions were actually produced and that he never authorized SWG to distribute Cernan editions containing the inscription "© 2021 Garey III." (See id. ¶ 83.) The plain implication of the Counterclaims is that it was only at or around the time of delivery of the Cernan editions that Kagan discovered the "Garey III" inscription. (See id. ¶ 43.)

Kagan has thus adequately alleged that SWG exceeded the scope of any license granted to it with respect to his artwork. See Sohm v. Scholastic Inc., 959 F.3d 39, 46 (2d Cir. 2020) (stating that if licensee acts outside the scope of license, licensor can sue for copyright infringement); Crowley v. Jones, 608 F. Supp. 3d 78, 88 (S.D.N.Y. 2022) (holding that plaintiff stated copyright claim by alleging

that failure to credit photographer did not satisfy condition
of license). SWG's Motion is accordingly **DENIED** with respect
to the copyright infringement claim.

    2.   <u>The False Copyright Management Information Claims</u>

Kagan's third and fourth counterclaims assert that SWG
violated 17 U.S.C. § 1202(a)(1) and (2), respectively, by
causing the Cernan editions to be marked with the inscription
"© 2021 Garey III" and distributing them to purchasers of the
sculptures. (<u>See</u> Counterclaims ¶¶ 67–80.) The text of the
statute, enacted as part of the Digital Millennium Copyright
Act ("DMCA"),[7] provides that no person "shall knowingly and
with the intent to induce, enable, facilitate, or conceal"
copyright infringement "(1) provide copyright management
information that is false" or "(2) distribute or import for
distribution copyright management information that is false."
17 U.S.C. § 1202(a) [hereinafter "Section 1202(a)"]. The
definition of "copyright management information" encompasses
the "name of, and other identifying information about, the
author of a work" and the "name of, and other identifying
information about, the copyright owner of a work." <u>Id.</u>
§ 1202(c)(2)–(3).

---

[7] <u>See</u> Pub. L. No. 105-304, § 103(a), 112 Stat. 2860 (Oct. 28, 1998).

To state a claim under Section 1202(a), a plaintiff must allege two scienter requirements with respect to the provision or distribution of false copyright management information ("CMI"): first, "that the defendant knew that the CMI was false," and second, that the defendant "acted with the intent to cause or conceal copyright infringement." Penske Media Corp. v. Shutterstock, Inc., 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021). SWG argues that Kagan has failed to adequately plead the two scienter requirements. (See Mot. at 2-3.)

With respect to the first scienter requirement, SWG appears to contend that there is no entity or person named "Garey III" and that SWG thus could not have known that the inscription "© 2021 Garey III" was false. (See Mot. at 3.) SWG cites no case or statute supporting this argument. This lack of support is not surprising, as it is unclear to the Court why the existence or nonexistence of a person or entity named "Garey III" would be legally relevant to a claim that SWG, by causing the Cernan editions to be marked with the "Garey III" inscription, provided and distributed information indicating that the Cernan copyright belongs to a person or entity, fictitious or not, *other than Kagan* — information that Kagan alleges is false. (See Counterclaims ¶ 68 (alleging that Kagan at all relevant times was the sole owner of the

Cernan copyrights).) In other words, Kagan alleges that an inscription indicating that any person or entity other than Kagan owns copyright in Cernan would be false regardless of whether that other person or entity has a legal existence.

Moreover, the Counterclaims support a plausible inference that SWG knew Kagan was the sole copyright owner, as Kagan alleges that SWG in the Representation Agreement promised to "ensure that [Kagan's] copyright to the [artwork] is protected, including informing all purchasers that [Kagan] retains copyright in the works." (Counterclaims, Ex. A cl. 13.1.) SWG therefore has failed to persuade the Court that Kagan has not plausibly alleged facts supporting the first scienter requirement applicable to the false CMI claims.

With respect to the second scienter requirement, SWG argues (see, e.g., Reply at 3) that Kagan's allegations are too conclusory to plausibly allege that SWG acted with the intent to cause or conceal copyright infringement, but the Court disagrees. Kagan alleges that he has never been an SWG employee, that he has never created or agreed to create a work for hire for SWG, and that SWG "instructed Olo" to inscribe the "Garey III" inscription "notwithstanding that only Kagan owned the copyright interest." (Counterclaims ¶¶ 43–44.) He also alleges that SWG "knowingly provided the false inscription" to purchasers of the Cernan sculptures.

(Id. ¶ 70.)   These   allegations,   combined   with   the
Representation   Agreement   language   protecting   Kagan's
copyright interests in his artwork, allow for the plausible
inference that, since SWG was on notice that Kagan owned the
Cernan copyright and nevertheless instructed Olo to inscribe
"© 2021 Garey III" on the sculptures, SWG acted with the
intent to cause or conceal infringement. To hold otherwise
would be contrary to the Second Circuit requirement that
district courts "be lenient in allowing scienter issues to
survive motions to dismiss." Michael Grecco Prods., Inc. v.
Alamy, Inc., 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019) (denying
motion to dismiss Section 1202(a) claim).[8]

Finally, the Court rejects SWG's apparent argument, made
in a footnote, that "information like the name of the author
of a work is not CMI unless it also functions as part of an
'automated   copyright   protection   or   management   system.'"
Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 301 (3d
Cir.   2011).   This   argument   relies   on   Textile   Secrets
International, Inc. v. Ya-Ya Brand Inc., 524 F. Supp. 2d 1184
(C.D. Cal. 2007), a decision placing great emphasis on the

---

[8] SWG also argues that it could not have intended to cause or conceal
copyright infringement because there could not have been copyright
infringement in light of SWG's license to use Kagan's artwork. (See Mot.
at 3.) This contention mirrors SWG's argument that Kagan's copyright
infringement claim should be dismissed, which the Court has rejected above
on the ground that Kagan sufficiently alleges that SWG exceeded the scope
of any license granted to it.

DMCA's legislative history. <u>See</u> 524 F. Supp. 2d at 1192–1203. As Kagan notes, numerous courts have declined to follow <u>Textile Secrets</u> as inconsistent with the plain text of the DMCA. <u>See, e.g.</u>, <u>Murphy</u>, 650 F.3d at 305; <u>Associated Press v. All Headline News Corp.</u>, 608 F. Supp. 2d 454, 461–62 (S.D.N.Y. 2009). This Court is likewise unpersuaded that the "Garey III" inscription is not CMI as that term is plainly defined in the text of the DMCA. <u>See</u> 17 U.S.C. § 1202(c)(2)–(3) (defining CMI as encompassing the "name of, and other identifying information about, the author of a work" and the "name of, and other identifying information about, the copyright owner of a work"). SWG's Motion is accordingly **DENIED** with respect to the false CMI claims.

## IV.  <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that the motion (<u>see</u> Dkt. Nos. 15, 19) filed jointly by Plaintiff Sheung Wan Gallery Limited ("SWG") and Crossclaim Defendant Over the Influence Inc. ("OTI Inc.") to dismiss the Second, Third, Fourth, and Fifth counterclaims and crossclaims (<u>see</u> Dkt. No. 8) of Defendant Michael Kagan ("Kagan") is hereby **DENIED**; and it is further

      **ORDERED** that SWG and OTI Inc. shall answer all of Kagan's counterclaims and crossclaims within twenty-one (21) days of the date of this Decision and Order.

**SO ORDERED.**

Dated:     18 January 2024
            New York, New York

                               Victor Marrero
                                  U.S.D.J.